## Case No. 11,909.

### ROBERTS v. PILLOW.

[Hempst. 624.] [1]

Circuit Court, E. D. Arkansas. June, 1851. [2]

DEED — SEAL — TAX DEED — STATUTE OF LIMITATIONS—EJECTMENT—ADVERSE POSSESSION— COLOR OF TITLE.

1. A seal impressed on paper is equivalent to sealing with wax, and a deed attested by such an impression is admissible in evidence.

1 [Reported by Samuel H. Hempstead, Esq.]
2 [Reversed in 13 How. (54 U. S.) 472.]

2. By the law of Arkansas the deed of a collector of the revenue for land sold for taxes, is primâ facie evidence of the regularity and legality of the sale. and of a good and valid title in the grantee, his heirs or assigns, unless there is something on the face of the deed to show it to be void.

3. And such deed is admissible in evidence without first proving that the requisites of the law have been complied with.

4. Statutes of limitation are statutes of repose. and are founded on sound policy, and should not be evaded by a forced or astute construction.

5. It is not necessary that a person claiming the protection of the statute should have a good title, or any title but a possession adverse to the true owner.

6. Color of title under a worthless or void deed, has always been received as evidence of adverse possession.

[This was an action in ejectment by Trueman Roberts against Jerome B. Pillow, for 160 acres of land.]

Absalom Fowler, for plaintiff.
Albert Pike, for defendant.

RINGO, District Judge. This is an action of ejectment for lands, to which the defendant pleads the general issue and two special pleas in bar. The first asserts "that, more than five years before the commencement of this suit the south half of the south-east quarter of section twenty-three, township fifteen, north of range three east, was sold by Miller Irvin as sheriff and collector of the taxes and revenue of the state of Arkansas and county of Phillips, in which the lands were and are situate, under and by virtue of the statute in such case made and provided, for the payment of the taxes and costs, then due said state and county on said lands, to the last and highest bidder at public auction at the court house door in said county, and then and there purchased by and struck off to one William Vales, on the 5th of November, 1839, said taxes and costs being then due for that year, and after twelve months from that time namely, on the 22d of October, 1844, said Irvin as such sheriff, under and by virtue of said sale, by deed of that date, duly executed, acknowledged, and recorded, conveyed the same lands in fee to one Richard Davidson as the assignee of, and by the direction of the said William Vales, and in like manner shows a sale of the residue or north half of said quarter section of land by Irvin as such sheriff and collector, on the 1st day of March, 1841, for taxes and costs due thereon for 1840; that the same was then and there purchased by, and struck off to one John J. Powell, and after the expiration of twelve months from that time, namely, on the 22d of October, 1844, said Irwin, as such sheriff, under and by virtue of said sale, by deed of that date, duly executed, acknowledged, and recorded, conveyed said land to said Richard Davidson as assignee of, and by direction of said Powell, and on the 20th of January, 1848, the said

Davidson by deed of that date by him and his wife duly executed and acknowledged, and thereafter duly recorded, conveyed and assigned said premises to one Samuel Henry Armstrong, who on the 16th of May, 1849, by deed of that date, by him and his wife duly executed and acknowledged, and thereafter duly recorded, conveyed and assured the said premises to said defendant, and that from the dates of said respective sales, the said defendant and said several grantors have successively had exclusive and undisturbed possession of said premises, and more than five years had elapsed after each of said sales before the commencement of this suit," concluding with a verification and prayer of judgment. The second alleges simply "that said plaintiff was not, nor was his ancestor, predecessor, or grantor seized or possessed of said premises or any part thereof within ten years next before the commencement of this suit," concluding with a verification and the usual prayer of judgment.

To these special pleas the plaintiff demurs, and by the special causes assigned therein insists, that the first is defective in failing to aver "that the collector's sales therein specified were made in conformity with the statutes then in force, and that the assessment and listing for taxation of said lands were in conformity therewith, and the execution and acknowledgment of such conveyances by such collector were made in like manner, and all the proceedings under which said lands so sold by said collector were regular and in strict conformity with the statute in such case made and provided. (2) That it does not specifically aver that such sales so alleged to have been made by the collector were regular and valid sales according to the laws then in force." To the third plea, "that it fails to aver that the defendant and those under whom he claims during the said period of ten years, therein mentioned, have continually held said tract of land in their possession, and adversely to said plaintiff. (2) That it does not show that defendant and those under whom he claims hold said tract of land by any right or title whatever. (3) The same concludes with a verification, whereas it should conclude to the country."

The second plea appears to be designed to place the defendant within the act of March 3, 1838, which enacts that "all actions against the purchaser, his heirs or assigns, for the recovery of lands sold by any collector of the revenue for the non-payment of taxes, and for lands sold at judicial sales, shall be brought within five years after the date of such sale, and not thereafter, saving to minors, persons of unsound mind, and persons beyond seas, the period of three years after such disability shall have been removed." Dig. 696. This is strictly a statute of limitations, and was designed to protect the purchasers of lands at judicial sales, or sales by collectors of the revenue for the non-payment of taxes, from actions which might oth-

erwise have been brought for the recovery of lands purchased at such sales, after the evidences requisite to establish the regularity of the proceedings, and the validity of the sale might in the usual course of events be lost to the purchaser without culpable or gross negligence on his part, while within such period, by the use of ordinary diligence and common prudence, the truth of the facts as they transpired and really existed could be generally established, and his title acquired by such purchase vindicated. But there is nothing in this act indicating a design to dispense in such case with any act or thing required by law to justify such sale, and thereby divest the right or title thereto out of the owner, and invest the purchaser therewith. On this subject it is silent. To make such defence available, it is not to be questioned, that certain facts must exist and be properly shown by the pleadings. The land when assessed must have been subject to be taxed, must have been listed for taxation, must appear in the lists of taxable property returned to and acted on by the county court of the county in which the land was at the time situate, and from which, under the order of the county court, the tax book must be made out by the clerk. In both the assessment list and tax book it must be stated or appear, whether it is taxed as the property of a resident or of a non-resident of the county, because the legal course of proceeding, after as well as before the sale, differs where the land belongs to a resident from that prescribed where it is charged as belonging to a non-resident of the county. To the tax book the clerk must attach a special warrant, by virtue of which warrant and the tax book, the sheriff, to whom the warrant is addressed as "collector," and who receives and holds it in that capacity, is alone authorized to proceed to collect the revenue, and upon default of payment by the person charged, to levy the amount charged of the property of the person charged, or of the lands to the amount charged thereupon. After having demanded payment of the owner, or person against whom the same is charged, if he be a resident of the county, and personal property cannot be found of which to levy the tax, in such case, but not otherwise, the lands shall be levied and sold as they are required to be, "under executions on judgments at law." Dig. c. 139, §§ 48, 49, 90. When not inconsistent with the provisions of this act, or in case the lands are owned by and assessed to a person not resident in the county in which the lands are situate, the taxes charged thereon not being paid, the collector, on or before the 15th day of September, annually, shall make out and file in the office of the clerk of the county court a list thereof, setting forth the owners' names, and a description of the lands, as the same are described in the tax book, and charge thereon the taxes due for the current or preceding year, together with a penalty of twenty-five per cent. on the

amount of taxes due, and cause a copy of such list to be set up at the court house door of his county, and published in some newspaper printed in this state at least four weeks before the first Monday of November, to which list he shall attach a notice that the whole of the several tracts of land or town lots described in such list, or as much thereof as shall be necessary to pay the taxes and penalty charged thereon will be sold at the court house door of his county on the first M·nday of November thereafter, unless such taxes, penalty, and expenses of advertising be paid before that time (Dig. c. 139, §§ 95, 96), and shall cause such list and notice to be recorded in the office of the clerk of the county court before the day of sale mentioned in such notice, and in conformity with such notice shall, on the first Monday of November, at and after the hour of 10 o'clock, a. m., proceed to offer for sale separately each tract of land and town lot contained in such list, on which the taxes and penalty have not been paid (Id. §§ 97, 98), and may continue such sale from day to day until the whole shall be sold or offered for sale. And where from any cause the collector shall fail to offer for sale the lands or town lots in his county liable to be sold for the payment of taxes and belonging to persons non-resident thereof, at the time prescribed for the sale of lands for taxes, the county court of such county on good cause shown, shall have power to order the collector to offer such lands and town lots for sale at a time to be therein expressed and on giving at least thirty days notice thereof in some newspaper printed in the state, in the same manner as required by this act in other cases. Dig. c. 139, § 129.

Some of these provisions of law may be regarded as merely directory, and the failure to observe and strictly follow their injunctions in every particular may not invalidate and make void a sale. Yet there are others indispensable to invest in the collector a legal authority to sell, and without which his sale, if he should assume to make one, would, as it seems to me, be simply void. To this class may be referred the tax book with the prescribed warrant thereto attached, which is based upon the assessment list, returned and made of record in the county court, and the orders of that court thereon, adjudicating and adjusting the same and must be in accordance therewith. The possession of this alone conveys to the officer a legal authority to collect the revenues charged upon the lands and other property and persons within the county. Without it the collector can neither legally receive any revenue required to be embraced therein, or levy the amount of any property or lands subject to sale for the payment of taxes, and any sale for the nonpayment of taxes made by him without such authority would be illegal and void, and no deed of the sheriff founded upon such sale would be sufficient to pass the title from the former owner to the purchaser. But these as well as other objections alike fatal to the claim of the purchaser if shown to exist, are to the extent of casting the burden of proof of the same on the former owner said to be obviated by the provisions of the 111th, 112th, and 113th sections of the same chapter which declare as follows, namely:

"Sec. 111. At any time after the lapse of one year from the time of such sale for taxes, if the land or lot sold shall not have been redeemed, the collector shall on request, and on the production of the certificate of purchase, and in case of the sale of part only of any tract, or production of the county surveyor's return of the survey in conformity with the requisition of such certificate execute and deliver to the purchaser, his heirs or assignee, a deed of conveyance for the tract of land, or town lot, or part thereof that shall have been sold as aforesaid.

"Sec. 112. The deed so made by the collector shall be acknowledged and recorded as other conveyances of lands, and shall vest in the grantee, his heirs or assigns, a good and valid title, both in law and equity, and shall be received in evidence in all courts of this state as a good and valid title in such grantee, his heirs or assigns, and shall be evidence of the regularity and legality of the sale of such lands.

"Sec. 113. No exception shall be taken to any deed made by a collector for lands sold for the payment of taxes; but such as shall apply to the real merits of the case, and are consistent with a liberal and fair interpretation of the intention of the general assembly."

The legal effect imparted to such deed is said to dispense with the necessity of alleging in a plea the facts required to be done prior to such conveyance, as the deed itself is made by law to vest in the grantee a good and valid title, both in law and equity, and also is made evidence of the existence of such facts, and therefore the allegation, that such deed was made and exists, amounts in law to a substantive and substantial allegation of every fact essential to the validity of the sale, and the vesting of the title in the grantee, and if it be for any cause invalid or insufficient, the facts rendering it so must be shown by the party who questions or denies its sufficiency.

But does the law impart such efficacy to every deed executed by a sheriff or tax collector, without regard to the existence of such facts as alone enable him to act in the matter; or only to his deed made in the execution of such authority? If to every deed. then, a conveyance by him of lands not taxed or contained in the tax book, or sold on a day or at a place not authorized by law, or without his having at the time of sale any warrant to collect the taxes, or levy the amount of the lands or other property; would prima facie be sufficient to transfer the lands of A. to B., and do so effectual-

ly in the absence of any showing of the non-existence of such facts as invest the collector with authority to sell, and without which his sale or any conveyance founded thereon would be void, he having no jurisdiction or cognizance of, or power over, the subject to do any act in relation thereto. Such does not appear to be the design of the law. It only authorizes a conveyance upon and in pursuance of a sale of the land, "that shall have been sold as aforesaid." How sold as aforesaid? The answer seems to be plainly indicated, for in its terms the reference is direct to the precedent provisions of the law authorizing the sale of lands by the collector for unpaid taxes on the conditions and subject to the limitations thereby prescribed. When such sale has been so made, the making as such deed is authorized after the lapse of one year from the day of sale, and in such case and under such circumstances the operation and effect thereof is such as is declared by the statute provisions; but this application cannot with justice, or under any known or recognized rule of interpretation, be extended to deeds made by the collector under other circumstances. If this be the true understanding of this law, and I do not perceive how it can reasonably be interpreted otherwise, it is manifest that a party relying on such deed must in connection therewith, show such facts as in law vested in the collector authority to sell property circumstanced as that was when sold, in relation to which he claims a right derived from such sale and a conveyance founded thereon, before he can receive the advantages or entitle himself to the legal presumptions and effect declared by the statute as incidents to such deed. What particular facts may be sufficient for this purpose it is the business of the pleader to ascertain, and not the duty of the court to indicate or specify in advance. Yet it seems to me, and I perceive no impropriety in so declaring, that it must at least be shown, that there was a tax book with a proper warrant attached thereto in the hands of the collector; that it embraced the lands in question,—especially if they are not sold as the property of a resident of the county; that a sale by the collector was made, by authority of the tax book and warrant, at a time and at the place prescribed or authorized by law; that the sale was by public auction and to the highest bidder as prescribed by the 99th section of chapter 139 (Dig. 887). Unless these facts be shown, and perhaps some others not here enumerated, it seems clear that the officer would possess no authority to act or sell, and if he did so, his act would be void. No legal right could be derived from or through such act, and the most favorable view for the purchaser at any sale made for the non-payment of taxes under the laws in question, which can be indulged, is to consider him in the like position as a purchaser of land levied and sold by vir-

tue of a writ of execution. The law certainly never designed to place him in a better situation; but, liberally construed, may possibly admit him to occupy the like position as regards the right acquired by such purchase, and to establish the same by corresponding evidences, or such as bear a close analogy thereto.

But the question is not as to the effect of the deed or the testimony which it supplies; but as to what facts are necessary to be alleged in a plea of the statute of limitations of five years, to show that the defendant, or person through whom he claims is a purchaser of lands, sold by some collector of the revenue for the non-payment of taxes, within the purview of the statute, which as before indicated implies a sale in fact, by the proper officer, upon or by virtue of sufficient legal authority for that purpose, vested in him at the time, and without any reference to the deed based on such sale, or its effect as an instrument of evidence, or means of passing the title. Such sale and purchase doubtless may be shown without any reference whatever to the deed afterwards to be made, and whatever effect the deed may have, the law does not admit the substitution of allegations showing its execution, etc., for those distinctly averring such specific facts as show a sale authorized by law. When this shall be done and not otherwise, the party is in a position to avail himself of the provisions of the statute. The plea under consideration, failing to show such a sale and purchase, is therefore insufficient.

The third plea is the exact converse of the statute on which it is based. The statute declares that "no action for the recovery of any lands or tenements, or for the recovery of the possession thereof, shall be maintained unless it appear, that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises in question within ten years before the commencement of such suit." This action is for the recovery of land which is alleged to be the property of the plaintiff. If so the right of property draws to it the right of possession, where no other right or interest in the land is shown. If the possession be vacant or not adverse, the law regards the legal owner as seized, though he may never have occupied or been upon the land. This is not a traverse or denial of any matter or fact alleged. But impliedly admitting or confessing that the plaintiff has no title to the land in question, and that the defendant entered and ejected the plaintiff therefrom, seeks to to justify these acts, and avoid the right demanded, by simply denying that the plaintiff or any party, through whom he claims, was seized or possessed of the land within ten years next before the commencement of the suit. Is this sufficient in law to avoid the admitted title of the plaintiff and his rights incident thereto? So far as disclosed by the pleadings, the title or legal estate in

the lands and its incidents, are the principal, if not the only matters in question. How, then, the title being admitted, may the seizin, which is its incident, be divested out of the plaintiff? To this the law seems to furnish this distinct answer, namely, by a possession adverse, or hostile to that of the plaintiff; a holding in opposition to, and in defiance of the title of the plaintiff. This constitutes a disseisin of the party, but in nowise affects its title; but effects a separation between the title and seizin, which otherwise generally remains united; leaving, however, with the title a legal right of entry and possession within the period prescribed by law. This, by the common law, was twenty years, but by our statute, is supposed to be reduced to ten years; and such possession seems to be necessary to enable a party to avail himself of the statute of limitations. In the case of Kirk v. Smith, 9 Wheat. [22 U. S.] 288, the supreme court, speaking of those rules which apply to acts of limitation generally, says: "One of these, which has been recognized in the courts of England and in all others where the rules established in those courts have been adopted is, that possession to give title must be adverse," and that "to allow a different construction would be to make the statute of limitations a statute for the encouragement of fraud—a statute to enable one man to steal the title of another by professing to hold under it. No laws admit of such construction." In McIver v. Ragan, 2 Wheat. [15 U. S.] 29, the same court says: "The statute of limitations is intended, not for the punishment of those who neglect to assert their rights by suit, but for the protection of those who have remained in possession under color of a title believed to be good." It has been repeatedly held as law in the courts of New York and other states, that to constitute an adverse possession, there must be possession under color and claim of title; but it has never been considered as necessary to constitute an adverse possession that there should be a rightful one. It has also been held in numerous cases, that a mere entry upon another is no disseisin, unless it be accompanied with expulsion or ouster from the freehold, and that a peaceable entry upon land apparently vacant, furnishes per se no presumption of wrong, and that where the entry is peaceable, it cannot work a disseisin. The disseizor is bound to show his tortious seizin affirmatively, because the law will never construe a possession tortious unless from necessity. On the other hand, it will consider every possession lawful, the commencement and continuance of which is not proved to be wrongful. 1 Johns. Cas. 33, 36; 6 Johns. Cas. 197; 5 Cow. 371.

These, as well as other principles affecting the rights of parties in such case, especially such as define and determine what acts and facts must combine to invest a party with the rights and character of a disseizor, conduce to show what facts must appear to produce a bar to such action as the present. But it may be said that under this plea, these may be shown in evidence, as without their being made to appear, the want of seizin in the plaintiff and those through whom he claims cannot be established, and which want or absence of seizin is the very essence of the plea. That such proof would be requisite to bar the action, if on the trial the plaintiff shall produce or show in himself a valid legal title to the land, (which by this plea is confessed,) may be admitted, and also that proof of such facts would show the plaintiff disseized, and as a consequence of such disseizin, that the plaintiff was not seized within ten years. This is the fact alleged, and if true and properly pleaded, creates, undoubtedly, a good bar unless he should bring himself within some exception or saving provided by the law. Yet it does not follow that such plea is admissible; but the contrary seems to me the necessary result of this view of the law. For the seizin of the plaintiff being confessed by the admission of his title, the law continues it, and preserves to him all the benefits thereof, until he is met by such facts as in law amount to a disseizin, continued for the space of ten years, and this appears to be the scope and import of the statute. If a defendant will by special plea avail himself of its provisions, he must distinctly allege and show a disseizin, for otherwise his plea amounts to nothing more than the general issue, under which the plaintiff is bound to establish a seizin or possession in himself, or some one under or through whom he claims, or fail in his action. To this objection the present plea appears to be subject. It avers nothing—no fact or matter—which the plaintiff on the general issue would not be bound to prove in support of his case. If on that issue the plaintiff fails to prove seizin or possession within ten years before the action was brought, he cannot recover. The fact alleged in this plea is nothing but a simple negation of such seizin, and is therefore unnecessary. It is but an argumentative denial, and a departure from the prescribed forms of pleading the general issue. As a plea in confession and avoidance, it fails to give color, or a plausible ground of action to the plaintiff; or if regarded as confessing the cause of action and attempting to avoid it by matter subsequent, it entirely fails to show any matter destructive of the plaintiff's seizin or possession, shows no disseisin or dispossession of the plaintiff or those under or through whom he claims, nor even so much as alleges either, and in this respect it is also defective, and produces no bar pleadable as such in this form of action. Demurrer sustained.

June 18, 1851.—This case having come on for trial before a jury on the plea of the

ROBERTS (Case No. 11,910,                    [20 Fed. Cas. page 910]

general issue, the collector's deeds mentioned in the foregoing pleas were offered in evidence by the defendant, and on the grounds expressed in the above opinion, were excluded, to which the defendant excepted, and the court signed a bill of exceptions, and verdict and judgment were rendered for the plaintiff.

The defendant sued out a writ of error, and removed the case to the supreme court.

[At December term. 1851, the judgment of this court was reversed. 13 How. (54 U. S.) 472.]